HARRY L. SWAIM, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 3170–66. Filed May 14, 1968.

*Robert A. Kohn* and *Allan B. Solomon,* for the petitioner.
*W. Gerald Thornton,* for the respondent.

OPINION

FAY, *Judge:* Respondent determined a deficiency of $14,072.70 in petitioner's income tax for the taxable year 1962.

Petitioner failed to discuss on brief certain issues raised in the pleadings. We therefore conclude that he abandoned these issues. The issue left for decision is whether petitioner received income under section 453(d)(1)[1] in the taxable year 1962 when the Jefferson Circuit Court in Kentucky awarded his wife a certain installment obligation in a judgment of final divorce.

All of the facts are stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Harry L. Swaim, the petitioner (hereinafter sometimes referred to as Harry), filed a Federal individual income tax return for the taxable year 1962 with the district director of internal revenue for the district of Kentucky. He was a legal resident of Louisville, Ky., when he filed the petition in this case.

Harry married Mildred F. Swaim (hereinafter referred to as Mildred) on March 21, 1925. They were subsequently divorced. They remarried on June 12, 1930.

In 1945 Harry and Mildred bought a home and farmland near Jeffersontown, Ky. (hereinafter referred to as the Jeffersontown property). They took title to the property in joint tenancy.

On September 8, 1959, Harry and Mildred sold the Jeffersontown property to Berkley Homes, Inc., for a net price of $417,860.90. As payment therefor, Harry received a downpayment of $21,980.46 and three promissory notes in the total amount of $176,950. The notes were equal in amounts and were due on September 8, 1960, September 8, 1961, and September 8, 1962. Mildred received a downpayment (including the option price) of $41,980.46 and three promissory notes in the total amount of $176,950. The notes payable to her were equal

---

[1] All statutory references are to the Internal Revenue Code of 1954.

in amounts and were payable at the same times as the notes received by Harry. Both Harry and Mildred elected to report their profit on this sale on the installment method pursuant to section 453.

Harry collected the proceeds of the 1960 note payable to him, and Mildred collected the proceeds of the 1960 note payable to her.

On September 20, 1960, Mildred instituted divorce proceedings against Harry in the Fourth Division of the Chancery Branch of the Jefferson Circuit Court in Louisville, Ky. (hereinafter referred to as Jefferson Circuit Court). This proceeding was adversary in character.

On April 23, 1962, the Jefferson Circuit Court promulgated its "Findings of Fact and Conclusions of Law" in Mildred's divorce suit. This document contains findings of fact to the effect that Harry provided all the money for the purchase of the Jeffersontown property. The document also contains the following pertinent passages:

> Under the [Kentucky] restoration statutes and the cases of *Hicks* v *Hicks*, 290 SW (2) 483 and *Eckhoff* v. *Eckhoff*, 247 SW (2) 374, [the] properties acquired by the plaintiff [Mildred] as a result of her marriage to the defendant [Harry] must be restored to him before an award of alimony can be made.
>
> Under the decision of the Court of Appeals and the *Kivett* case [312 SW (2) 884] it would appear that restoration should be made insofar as possible, of the identical property which was delivered or conveyed to the plaintiff. This would mean that the house on Glenwood Road, the furniture located therein, the two [remaining installment notes from the sale of the Jeffersontown property] and the investments purchased by the plaintiff would have to be re-transferred to the defendant before an award of alimony could be made. However, since the defendant's estate is substantial and the award of alimony will be made on a lump sum basis, the Court will not require the plaintiff to actually transfer any of the aforementioned assets to the defendant unless the award of one-third of the estate of the defendant is less than the value of the property which should be restored to him.
>
> \*       \*       \*       \*       \*       \*       \*
>
> Under the rule in the *Heustis* case, 346 SW (2) 778, plaintiff is entitled to at least one-third of [Harry's] property. In view of the length of the marriage of the parties, the Court believes that a total award of $180,000 would be appropriate. The question now arises as to what property the $180,000 should comprise. The Court finds that the plaintiff is entitled to title in the Glenwood Road property residence with a value of $40,000.00, the furniture with a value of $5,000.00, the investments acquired by her amounting to $42,458.96, and one of the two installment notes owing to her in the sum of $58,983.83. This leaves a balance of $33,557.21 after the plaintiff has assigned to the defendant the final installment note from Berkley Homes, Inc. owing to her in the sum of $58,983.83. The Court believes that it would be equitable to require the defendant to pay this balance of $33,557.21 in a first installment of $10,000.00 due forty (40) days after date of judgment, and the balance of $23,557.21 to be paid in eleven (11) annual installments, commencing ninety (90) days from date of judgment. \* \* \*

On June 14, 1962, the Jefferson Circuit Court promulgated its "Judgment" in Mildred's divorce suit. The judgment granted Mildred a final divorce against Harry. It also listed in detail all the properties

of which Harry was to be the rightful owner following the divorce. The judgment contained the following provisions relative to Mildred's property rights:

3. The plaintiff, Mildred F. Swaim, is hereby directed and ordered to assign to the defendant, Harry L. Swaim, all of her right, title and interest in and to the final installment of a $58,983.33 promissory note made payable to her from Berkley Homes, Inc., being the installment due on September 8, 1962.

4. The plaintiff, Mildred F. Swaim, is adjudged to be the sole owner of the following property:

\* \* \* \* \* \* \*

(c) Plaintiff is likewise entitled to retain and receive payment on the installment note from Berkley Homes, Inc., payable to her, insofar as the installment due and payable on September 8, 1961, is concerned, being in the principal amount of $58,983.34.

\* \* \* \* \* \* \*

The above amounts are adjudged to the plaintiff as a portion of the lump sum alimony due her under the terms of this judgment.

On July 5, 1962, the Jefferson Circuit Court promulgated an "Amended and Supplemental Judgment" in Mildred's divorce suit. Among other things, this document ordered Mildred to keep the 1962 installment note instead of the 1961 note and to transfer to Harry the 1961 note instead of the 1962 note. The occasion for this change was that sometime prior to June 1962 Mildred collected $5,000 as a partial payment on the 1961 note payable to her.

In his Federal income tax return for 1962, Harry did not include any income under section 453 (d) (1) because of the Jefferson Circuit Court's award to Mildred, in its judgment of final divorce, of the 1962 note payable to her.

In his notice of deficiency for 1962, respondent, among other things, increased Harry's adjusted gross income by $26,383.46. He did so on the ground that Harry realized a gain under section 453 (d) (1) by discharging part of his divorce settlement obligation with the 1962 note payable to Mildred.

The issue for decision is whether Harry had a gain under section 453 (d) (1) [2] in the taxable year 1962 when the Jefferson Circuit Court, in its judgment in Mildred's divorce action, awarded to Mildred the 1962 note payable to her. The issue turns upon the question of whether

---

[2] SEC. 453. INSTALLMENT METHOD.

(d) GAIN OR LOSS ON DISPOSITION OF INSTALLMENT OBLIGATIONS.—

(1) GENERAL RULE.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

(A) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

(B) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of distribution, transmission, or disposition otherwise than by sale or exchange.

Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received.

Harry should be treated as having "distributed, transmitted, sold or otherwise disposed of" the 1962 note payable to Mildred because of the judgment of the Jefferson Circuit Court.

The Jefferson Circuit Court in effect held that Harry owned the note involved herein prior to the divorce, notwithstanding the fact that it was payable to and in the possession of Mildred.[3] Because of this holding by the Jefferson Circuit Court, we think the rule of *United States* v. *Davis*, 370 U.S. 65 (1962), governs the case at bar. See *David R. Pulliam*, 39 T.C. 883 (1963), affd. 329 F.2d 97 (C.A. 10, 1964), certiorari denied 379 U.S. 836 (1964), where we applied the *Davis* rule to strikingly similar facts. In *Davis* the Supreme Court held that a husband made a taxable disposition when he transferred appreciated stock to his former wife pursuant to a property settlement agreement incorporated into a divorce decree. Applying the *Davis* rule to the present case, we conclude that Harry "distributed, transmitted, sold, or otherwise disposed of" the 1962 note payable to Mildred when the Jefferson Circuit Court awarded the note to her.

It is true, as petitioner suggests, that applying *Davis* to the instant case might cause a Federal tax result to hinge upon State law. The Supreme Court considered and rejected this argument, however, in reaching its opinion in *Davis*. See *United States* v. *Davis, supra* at 71. Furthermore, this possibility was not a bar to our result in *Pulliam*.

It might seem at first blush that Mildred made a taxable disposition of the 1962 note payable to her when the Jefferson Circuit Court ruled that she had to restore it to Harry pursuant to Kentucky law. This restoration was at most, however, a transfer of bare legal title in view of the Jefferson Circuit Court's determination that the note was actually Harry's property. It follows that Mildred's transfer was not a taxable disposition. See *David R. Pulliam, supra.*

We do not agree with petitioner that this case is controlled by *Cofield* v. *Koehler*, 207 F.Supp. 73 (D.Kans. 1962). In that case the State court granting the divorce did not find that the property involved belonged to the husband prior to divorce. Indeed, it found that both spouses contributed to accumulating the property and that the property, therefore, belonged to both. This circumstance is not present in the case at bar.

We conclude that Harry "distributed, transmitted, sold, or otherwise disposed of" the 1962 note payable to Mildred in 1962 when the Jefferson Circuit Court awarded the note to her. We accordingly hold that Harry had a gain under section 453(d)(1) in 1962.

*Decision will be entered for the respondent.*

---

[3] Neither party herein contends that the judgment of the Jefferson Circuit Court in Mildred's divorce action is founded upon points of Kentucky law upon which the highest court in Kentucky has not spoken. From our own reading of the Jefferson Circuit Court's "Findings of Fact and Conclusions of law" we conclude that its judgment was based upon well-established points of Kentucky law. See *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967).