**Judy K. LAIRD**

v.

**The UNITED STATES.**

**No. 791–87T.**

United States Claims Court.

March 16, 1989.

Joseph Wetzel, Portland, Or., attorney of record for plaintiff.

Alexandra E. Nicholaides, Washington, D.C., with whom was Acting Asst. Atty. Gen. James I.K. Knapp, for defendant.

## OPINION

YOCK, Judge.

This tax case is currently before the Court on the parties' cross-motions for summary judgment.[1] The case involves the tax consequences of a transfer of appreciated property (stock) by Mr. Shirley L. Laird to his former wife, Ms. Judy K. Laird (the plaintiff here) pursuant to a State of Oregon divorce decree issued in 1983. The Internal Revenue Service disallowed plaintiff's claims for refund of income taxes paid as the result of recognizing capital gains in the years 1983 and 1984 and plaintiff now seeks relief in this Court. For the reasons stated herein, the defendant's cross-motion for summary judgment is granted, the plaintiff's motion for summary judgment is denied and the plaintiff's complaint is to be dismissed.

### Facts

On June 14, 1958, plaintiff Judy K. Laird married Mr. Shirley L. Laird. Thereafter, Ms. Laird worked at her husband's logging and road construction business until the birth of their first child in 1961. Subsequently, plaintiff became a full-time house-

keeper and gave birth to two more children. In 1975, the Lairds separated and Ms. Laird once again began working in Mr. Laird's business office doing office work, for which she was paid some $700 per month. Finally, in 1983, the marriage between these two parties was dissolved by court decree. Plaintiff had no ownership interest in her husband's business nor did she participate in the management or growth of such business prior to the filing of the divorce petition.

As noted, Mr. Laird was engaged in the logging and road construction business. This business began as a partnership named Pacific Construction Company with the second partner being Mr. Alton Strain. Due to financial success, the partnership, in 1970, was divided into four separate entities and each entity was incorporated. The four corporations were named as follows: Shirley Laird, Inc. (SLI); S & W Lairds', Inc. (S & W); L & L Skyline Company (L & L); and Laird Trucking Company. Initially, Mr. Laird and Mr. Alton Strain owned all of the capital stock in the four corporations. However, in 1972, Mr. Strain left the corporations and Mr. Laird became the sole owner of all of the corporations' outstanding capital stock. Shortly thereafter, Laird Trucking Company became a wholly-owned subsidiary of L & L.

Subsequent to Mr. Laird's assumption of a 100 percent ownership of the noted corporations, Mr. Laird filed for divorce. On January 6, 1983, the Oregon Circuit Court for Curry County granted the divorce. On the same day, the Circuit Court found that, although Mr. Laird was the sole owner of the outstanding capital stock in the three Oregon corporations, the parties held their assets "under a species of common ownership." As a result, the Court awarded Judy Laird one-half of the corporate stock holdings. This divorce decree became final on February 6, 1983.

On February 13, 1983, seven days after the divorce became final, plaintiff offered by letter to sell her stock back to each

1. The defendant requested oral argument in this case as allowed by paragraph 2 of RUSCC Appendix H. However, given the parties' extensive and informative briefings on the legal issues involved herein, this Court finds further oral argument unnecessary.

corporation. In her letter to each corporation, Ms. Laird indicated that the proposed sell back or redemption would "probably" result in her incurring a tax liability. Subsequently, the redemption offers were accepted by each corporation. The redemption agreements with two of the three corporations took into consideration the uncertain tax consequences of the transaction. Specifically, the agreements provided that if plaintiff's redemption triggered a taxable event, then SLI and L & L would each pay additional amounts to cover any resulting tax liability. Ms. Laird accepted these terms and her stock was then redeemed by the corporations on or about February 15, 1983.

On her 1983 and 1984 federal income tax returns, plaintiff claimed a carryover basis on the stock received pursuant to the divorce decree and reported capital gains resulting from the stock redemptions. However, Ms. Laird subsequently filed for a refund of taxes paid alleging that her basis in the corporate stock should have been the fair market value of the stock at the time of transfer. As such, plaintiff would have realized no gain on the stock redemptions since her basis in the stock would have been equal to the redemption proceeds. The Internal Revenue Service denied Ms. Laird's claim for a tax refund and she now seeks relief before this Court.

### Discussion

As earlier indicated this case is currently before the Court on the parties' cross-motions for summary judgment. In her motion, the plaintiff, Ms. Laird, argues that the transfer of appreciated corporate stock incident to the property division ordered by the divorce decree constituted a taxable event at the time of the transfer resulting in tax liability for which Mr. Laird was responsible.[2] As a result, the plaintiff contends that she was entitled to take a stepped-up basis in the stock received as allowed by 26 U.S.C. § 1012 (1982). There-

fore, according to plaintiff, no tax consequences resulted from her subsequent stock redemption since her basis equalled the amount received upon the disposition of the stock and thus a refund of the capital gains tax previously paid, due to the stock redemption, should be refunded.

In opposition, the defendant argues that the transfer of corporate stock from Mr. Laird to Ms. Laird, as ordered by their divorce decree, was a nontaxable event which did not result in the imposition of tax liability. The defendant contends that in accordance with Oregon law, the corporate stock was jointly-owned property and the transfer of such jointly-owned property pursuant to a court-ordered divorce decree was a nontaxable event. The defendant believes it was simply a division of property between co-owners. As such, the defendant contends, a receiving spouse merely takes a carry-over basis in the transferred property at the time of transfer. Consequently, any subsequent disposition at a cost higher than the carry-over basis does in fact yield tax liabilities for which the owner is responsible. Because Ms. Laird did reap a profit in the subsequent redemption of her corporate stock, the defendant contends that capital gains taxes were properly imposed. Consequently, Ms. Laird is entitled to no tax refund in this proceeding. In this connection, the defendant notes that this Court is obliged to recognize relevant state law as it pertains to the property rights of the principal parties.

As the parties herein are in essential agreement on all the facts material to this case, summary disposition is appropriate. RUSCC 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The only matter for this Court to decide is which party is entitled to judgment as a matter of law given the stated facts. The issue for decision, of course, is whether or

---

**2.** In support of this proposition, the plaintiff relies upon *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). Although *Davis* was legislatively overruled by Pub.L. No. 98–369, 98 Stat. 793 (July 18, 1984), now codi-

fied at 26 U.S.C. § 1041 (Supp. IV 1986), the *Davis* rule applies here since the effective date of the divorce preceded the date the new law was enacted.

not the court-ordered transfer of the appreciated stock, held in Mr. Laird's name only, resulted in a taxable event at the time of transfer. If the transfer did trigger a taxable event, the responsibility for payment of any capital gains would be placed on Mr. Laird at that time. On the other hand, if the transfer was merely a division of property between co-owners, the taxable event would be postponed to the point in time when Ms. Laird subsequently disposed of her half of the corporate stock.

In regard to this issue, the Court finds guidance in the case of *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). In *Davis*, the Supreme Court discussed the taxability of a transfer of property between spouses upon the dissolution of their marriage. *Davis* held that the transfer of separately owned appreciated property from one spouse to the other spouse pursuant to a divorce decree was a "sale or other disposition" of property under sections 61(a), 1001, and 1002 of the Internal Revenue Code of 1954. *Davis, supra,* 370 U.S. at 68–71, 82 S.Ct. at 1192–94. As a consequence, the transferring spouse was required to pay taxes on the capital gain realized at the time of transfer. The Court reasoned that under the law of the domicile of the husband and wife, the wife had "no interest—passive or active—over the management or disposition of her husband's personal property," and that the transaction did not "remotely reach the dignity of co-ownership" or "equate * * * with a division of property by co-owners." *Davis, supra,* 370 U.S. at 70–71, 82 S.Ct. at 1193–94.

In essence, the Court held that one must look to the substantive law of the appropriate state to determine the nature of the receiving spouse's property interest before deciding whether the transfer of property pursuant to a divorce decree is a taxable event. *Davis, supra,* 370 U.S. at 70–71, 82 S.Ct. at 1193–94. If the property settlement involves property jointly owned by the spouses when the marriage is dissolved, any transfer is a nontaxable event. *See Imel v. United States,* 523 F.2d 853, 857 (10th Cir.1975); *McIntosh v. Commissioner,* 85 T.C. 31, 45 (1985). On the other hand, if the substantive law of the state does not grant one spouse a vested interest in the other spouse's property, any transfer of such property under a divorce decree clearly would constitute a taxable event. *See Davis, supra,* 370 U.S. at 70–71, 82 S.Ct. at 1193–94; *Pulliam v. C.I.R.,* 329 F.2d 97, 100 (10th Cir.), *cert. denied,* 379 U.S. 836, 85 S.Ct. 72, 13 L.Ed.2d 44 (1964). In making this distinction, the Supreme Court was clearly mindful of the reality that differing state laws could yield differing tax consequences under identical fact patterns. *See Davis, supra,* 370 U.S. at 71, 82 S.Ct. at 1193–94. This, however, did not prevent the Court from relying on the dictates of state law to determine the federal tax consequences of a given transaction.

With the mandates of *Davis* in mind, this Court must turn to the state law of Oregon in order to resolve the merits of the pending case. In this regard, the case of *Engle and Engle,* 293 Or. 207, 646 P.2d 20 (1982), which dealt with a fact pattern identical to that presented by the case at bar, was decided by the Oregon Supreme Court. In *Engle,* divorce proceedings initiated in the trial court resulted in a property settlement which awarded the wife certain appreciated corporate stock which previously had been the sole property of the husband. On appeal, the husband had argued that the trial court erred in establishing the property division because the trial court failed to consider the tax consequences of the proposed stock transfer in light of the *Davis* case.

In this connection, the Oregon Supreme Court noted that:

> The Court of Appeals [*In re Marriage of Engle*] 52 Or.App. 561, 629 P.2d 397 [1981] held that the wife had little interest in the corporate stock, that she had no power to transfer the property by will or otherwise, and that "[a] transfer of separately owned, appreciated property pursuant to a decree of dissolution in Oregon most likely will result in taxable gain to the transferor." 52 Or.App. at 576, 629 P.2d 397. The Court of Appeals therefore remanded the case to the trial

court "so that the judgment awarded wife may be calculated with due consideration for the tax consequences to husband." 52 Or.App. at 577, 629 P.2d 397. *Engle, supra,* 293 Or. at 210, 646 P.2d at 21.

After the Court of Appeals' decision was issued in the *Engle* case, the state legislature in Oregon passed an amendment to the property division statute used in Oregon divorce proceedings. The statute as amended states:

(1) Whenever the court grants a decree of * * * dissolution of marriage * * * it has power further to decree as follows:

* * * * * *

(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * *Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership and a transfer of marital assets * * * shall be considered a partitioning of jointly owned property.* [Emphasis added.]

Or.Rev.Stat. § 107.105(1)(e) (1981); [3] *see also Engle, supra,* 293 Or. at 211–13, 646 P.2d at 22–23 (discussion of evolution of statute). The purpose of this amendment was clearly to avoid the tax consequences of *United States v. Davis* by giving one spouse a valid property interest in the other spouse's separately-owned property, and it was to be retroactively applied to 1977. Such purpose was so stated by Oregon State Legislator Margaret Hendriksen:

The proposed amendment to ORS 107.-105(1)(e) is intended to clarify the effect of the prior amendment to that provision enacted by the 1977 Oregon Legislature. It was widely believed at that time that such amendment provided each spouse with rights in the marital assets rising to the dignity of co-ownership, which would then make a transfer of such assets pur-

suant to a dissolution of marriage not a taxable transfer under the doctrine set forth in *U.S. v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), whether such assets were jointly or separately held.

* * * * * *

The purpose of this legislation is simply to avoid imposing the tax at the time the property is transferred in a property settlement pursuant to a dissolution of marriage.

*Engle, supra,* 293 Or. at 211–12, 646 P.2d at 22 n. 4.

In view of the legislative amendment, the Oregon Supreme Court, on appeal, concluded that the Court of Appeals' remand to the trial court was no longer appropriate. Initially, the Court noted that the amended statute classified a transfer of property pursuant to a divorce decree as "a partitioning of jointly owned property," provided the property to be transferred qualified as a "marital asset." *Engle, supra,* 293 Or. at 213–14, 646 P.2d at 23. Although "marital assets" were not defined by the statute, it was clear to the Court that corporate stock "acquired during the marriage other than by gift or inheritance or other than in exchange for property which was received by gift or inheritance" was in fact a marital asset. *Id.* 646 P.2d at 24. Consequently, in *Engle,* the receiving spouse held a sufficient property interest in the corporate stock to qualify the transfer of such upon marriage dissolution as being a nontaxable event. *Id.* 646 P.2d at 26. Implicit in the Court's decision was the fact that record title to the corporate stock being held solely in one spouse's name did not defeat the other spouse's joint interest in such property.

Finding guidance in both *United States v. Davis, supra,* and *Engle, supra,* this Court must conclude that the transfer of corporate stock from Mr. Laird to Ms. Laird, as ordered by the divorce decree, was a nontaxable event. Clearly, the

---

**3.** At all times relevant to this cause of action, this code section was codified at Or.Rev.Stat. § 107.105(1)(e) (1981). However, subsequently, this code section was recodified as section 107.-105(1)(f) of the Oregon Revised Statutes.

Court in *Engle* confirmed the existence of a substantive property right held by the transferee spouse, and such right is sufficient in itself to justify this conclusion under the authority of *United States v. Davis, supra.*

Moreover, this Court is bound by the decisional law of the Oregon Supreme Court when it comes to defining various property interests and is simply not free to substitute any differing opinion as to these matters. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Collins v. Commissioner,* 412 F.2d 211, 212 (10th Cir. 1969); *McIntosh, supra,* 85 T.C. at 39. In this regard, plaintiff argues vigorously in her briefs that *Engle* simply does not control the disposition of this case. In essence, plaintiff is asking this Court to decide the case at bar without regard to the Oregon Supreme Court's decision in *Engle* and without regard to section 107.105(1)(e) (1981) of the Oregon Revised Statutes. To do that, of course, would be contrary to the law as articulated in *Davis* and this Court is bound by that precedent.

In sum, the plaintiff is simply not entitled to a federal income tax refund. Under Oregon law, once the Lairds' divorce petition was filed, the corporate stock previously held by Mr. Laird became "a species of co-ownership * * * [and thus] jointly owned property," with Ms. Laird being a co-owner, and the subsequent transfer of such property was a nontaxable event. Given this result, there were no immediate tax consequences resulting from the decreed transfer. Instead, Ms. Laird simply assumed a carry-over basis in the corporate stock. Resultingly, when Ms. Laird subsequently disposed of the stock at a cost higher than the initially acquired basis, tax liabilities, for which she was responsible, did arise. Accordingly, Ms. Laird was obliged to pay the capital gains tax, as she did for tax years 1983 and 1984, and thus is not now entitled to a refund.

## CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the clerk is directed to enter judgment dismissing the plaintiff's complaint. Plaintiff is entitled to no refund of income tax paid for the tax years 1983 and 1984.

Each party is to bear its own costs.

IT IS SO ORDERED.